UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

David C. Hastings,                                       Civil No. 04-3370 (DWF/JSM)

           Plaintiff,

v.                                                    **MEMORANDUM OPINION AND ORDER**

Carlson Marketing Group, Inc.,

           Defendant.

---

Andrea F. Rubenstein, Esq., Hedin Goldberg & Glidden PA, counsel for Plaintiff.

Katie M. Connolly, Esq., Tamika R. Nordstrom, Esq., Gregory James Stenmoe, Esq., Briggs & Morgan, PA, counsel for Defendant.

---

## Introduction

The above-entitled matter came before the undersigned United States District Court Judge on September 30, 2005, pursuant to Plaintiff David C. Hastings' ("Hastings") Motion for Partial Summary Judgment and the Defendant Carlson Marketing Group, Inc.'s ("Carlson") Motion for Summary Judgment. In his Complaint, Hastings alleges violations of the Family Medical Leave Act of 1993, 29 U.S.C. §§ 2601, *et seq*. ("FMLA"). For the reasons set forth below, Hastings' motion is denied; Carlson's motion is granted.

## Background

On February 24, 2003, Carlson hired Hastings as a manager of management strategy consulting at a salary of $114,000 per year. (Affidavit of Katie M. Connolly ("Connolly Aff."), Ex. 2, Deposition

of David C. Hastings ("Hastings Dep.") at 25, 31). Hastings' primary responsibility at Carlson was to manage an internal culture change initiative. (*Id.* at 25.) Approximately three weeks after being hired, Hastings took medical leave because he suffered from migraine headaches. (*Id.* at 61.) Hastings also began suffering from fatigue, sinus infections, a herniated neck disk, and depression. (*Id.* at 59, 134–38.) Consequently, Hastings missed a great deal of work.

During the 12 months preceding his last medical leave, Hastings worked only 104 days. (Connolly Aff., Ex. 1.) Whenever Hastings missed three consecutive days of work due to illness, Carlson's benefits department sent Hastings a packet of forms, including a medical certification form to be completed by his physician, and a notice about the provisions of the policy. (Affidavit of Andrea F. Rubenstein, Ex. 3b, Deposition of Michele Helgemo ("Helgemo Dep.") at 9–13.) All of Hastings' requests for medical leave were approved except for his April 5, 2004 request. (*Id.* at 23.)

There are no records indicating how much Hastings worked when he was able to report for work. However, Hastings testified that he tried to keep his average workday below 10 hours and that working more than 10 hours per day was a rare event. (Hastings Dep. at 48.) Hastings testified that there may have been "one instance" where he worked more than 12 hours per day. (*Id.* at 47.) Yet Hastings also testified that "many times" he worked more than 12 hours per day. (*Id.* at 38.) Hastings stated that he frequently worked at home during the evenings, but there were days that he left work early because of health issues. (*Id.* at 37, 62.) Hastings stated that there were days when he was at work that he could not work or functioned at a lower level due to illness. (*Id.* at 61–62.) Hastings also left work for lunch, doctor appointments, haircuts, and happy hours. (*Id.* at 39–40.)

Hastings also testified that he worked at home for two hours per day while on medical leave

until the end of May 2003, when Carlson directed him to stop working while on leave. (*Id.* at 51–53.) Between March 22, 2003, and the end of May 2003, Hastings was absent from work nine days. (Connolly Aff., Ex. 1.)

Hastings last took medical leave beginning March 22, 2004. Hastings' psychiatrist, Dr. Beecher, stated on the medical certification form that Hastings would be able to return to work on Monday, April 5, 2004. (Connolly Aff., Ex. 5.) Hastings was expected to attend a 9:00 a.m. managers' meeting that morning. (Hastings Dep. at 95.)

On Thursday, April 1, 2004, Hastings suffered from a sinus infection and attended a dentist appointment because two cracked teeth were causing him pain. (*Id.* at 93.) The dentist placed a temporary filling in one tooth and expressed concern that the tooth might need a root canal. (*Id.* at 94.) Hastings testified that he felt pretty well and was optimistic that he would return to work on Monday, April 5. (*Id.* at 93.) Hastings also visited Dr. Beecher on April 1, 2004. (*Id.* at 94.) Over the weekend, Hastings primary ailment was his sinus infection. (*Id.* at 99.) Hastings testified that if he were only fighting his tooth pain, he would have been able to go to work. (*Id.*) By Sunday, Hastings still expected that he would be able to attend work the following day. (*Id.*)

On Monday, April 5, 2004, Hastings woke up at 6:00 a.m. with severe pain in his tooth. (*Id.* at 100.) Hastings testified that his sinus infection was better by that time. (*Id.*) Hastings testified that "the pain was so bad in [his] tooth [he] couldn't think of anything else." (*Id.*) Hastings also testified that he had severe fatigue. (*Id.*) Hastings took some medication and dozed off. (*Id.* at 101.) Hastings woke up around 9:00 a.m. with "mind numbing" pain in his tooth. (*Id.* at 103.) Around 10:00 a.m., Hastings called the administrative assistant for his work group, Stacey Dyson. (*Id.* at 104.) Hastings testified

3

that he told Dyson that he had severe pain in a tooth and a severe sinus infection and that he hoped to get an emergency appointment with his dentist and then return to work in the afternoon. (*Id.* at 109.) Dyson testified that Hastings told her he was going to the dentist and would try to come to work in the afternoon. (Connolly Aff. Ex. 6, Deposition of Stacy Dyson at 8.) Hastings then went to sleep until around 5:00 p.m., when his wife woke him up and said that work had called. (Hastings Dep. at 108.) By this time, the pain in his tooth had subsided. (*Id.* at 13.)

> Hastings then called Michele Helgemo from human resources, and left a voicemail message:
>
> Hey Michele, this is Dave Hastings calling, um sorry I was sleeping there when you just called a few minutes ago, ah, my wife just uh gave me the message, um I should be back into work tomorrow so today I just had a follow up um from a root canal on my tooth and I just came back home and was just really tired and fell asleep actually so I had intended to only miss a little bit today um and uh actually didn't [sic] had intended to get back obviously today um as of last Monday so um but I feel better so I should be able to get back in tomorrow no problem. Um let me know if I need to get any paperwork or anything um but otherwise uh I'll be back in tomorrow. Thank you. Bye.

(*Id.* at 110–11.)

At approximately 5:15 p.m., Helgemo returned Hastings call and terminated his employment. (*Id.* at 114.) Hastings told Helgemo that he would be able to get a medical certification for his absence. (*Id.* at 120.) Hastings testified that Helgemo told him it was too late to obtain a medical certification. (*Id.* at 120.) On April 7, 2004, Hastings met with Helgemo for an exit interview. (*Id.* at 122.) Hastings testified that he reiterated to Helgemo that he could provide medical certification that his dentist was aware that tooth pain might occur. (*Id.* at 122.) Hastings also testified that he told Helgemo that he was receiving care from a psychiatrist for major depression. (*Id.* at 122.) Until then, Helgemo was unaware that Hastings suffered from depression. (*Id.* at 122–23.)

Hastings never submitted a medical certification form for his absence on April 5. However, on April 29, 2004, Dr. Beecher sent Helgemo a letter indicating that, in his opinion, Hastings was unable to return to work on April 5 due to "headache, severe fatigue, and difficulties with his sinus infection." (*Id.* at 145.) Hastings testified that he would have been able to attend work on Tuesday, April 6. (*Id.* at 125–26.) Hastings also testified that he felt well enough to work March 29th through April 2nd. (*Id.* at 126–27.) He admitted that, despite his contrary representations to Helgemo, he never visited a dentist on April 5 and never had a root canal. (*Id.* at 101, 113.) Hastings also admitted that he and Dr. Beecher had determined that his depression was "over with" by April 5, 2004. (*Id.* at 145.)

## Discussion

**I.     Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial.

*Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

**II.     The FMLA**

The FMLA allows eligible employees to take up to 12 workweeks per year of medical leave because of a serious health condition that makes the employee unable to perform the functions of the position of such employee, and protects their right, upon return, to be placed in the same or an equivalent position. *See* 29 U.S.C. §§ 2612(a)(1)(D), and 2614(a). Under the FMLA, "it shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided under Title I of the Act. 29 U.S.C. § 2615(a)(1). To prevail on an interference claim, "a plaintiff must establish that (1) he is an '[e]ligible employee,' 29 U.S.C. § 2611(2); (2) the defendant is an '[e]mployer,' 29 U.S.C. § 2611(4); (3) the employee was entitled to leave under the FMLA, 29 U.S.C. § 2612(a)(1); (4) the employee gave the employer notice of his intention to take leave, 29 U.S.C. § 2612(e)(1); and (5) the employer denied the employee FMLA benefits to which he was entitled." *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).

In order to be eligible for FMLA benefits, an employee must (1) have been employed by the employer from whom leave is requested for at least 12 months from the date the leave commences; and (2) have provided the employer with at least 1250 hours of service during the previous 12-month period. 29 U.S.C. § 2611(2)(A); *Robbins v. Bureau of Nat. Affairs*, 896 F. Supp. 18, 20 (D.D.C. 1995). The FMLA delineates that "hours of service" must be determined by the same principles used in

the Fair Labor Standards Act ("FLSA"), codified at 29 U.S.C. § 207, and by regulations created pursuant to that act, to determine "hours of work" for payment of overtime compensation. 29 U.S.C. § 2611(2)(C). Under the FMLA, hours/days of paid vacation and sick leave cannot be included in the computation of hours of work. 29 U.S.C. § 207(e)(2). An employer need not keep a record of hours worked by "bona fide executive, administrative, and professional employees," but the employer bears the burden of showing that the employee has not worked the requisite hours. 29 C.F.R. § 825.110(c)(2004).

The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Under the regulations, "continuing treatment" requires incapacity of more than three consecutive calendar days and either treatment two or more times by a health care provider or treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment. 29 C.F.R. § 825.114(a)(2).

Under the FMLA, "the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave," but the employee need not specifically mention the FMLA. *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999). However, FMLA regulations require employees to provide adequate notice to their employers of the need to take leave. *See* 29 C.F.R. § 825.302-303. *Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148 (8th Cir. 1997). In situations where the need for leave unexpectedly arises, the employee is to give notice "as soon as practicable." 29 C.F.R. § 825.303(a); *Carter*, 121 F.3d at 1148.

Both parties move for summary judgment on the issue of whether Hastings was eligible for FMLA leave. The Court finds that there is a genuine issue of material fact regarding Hastings' eligibility for FMLA leave. It is undisputed that Carlson employed Hastings for 12 months prior to his last medical leave, but both parties assert that they are entitled to summary judgment on the issue of whether Hastings worked 1250 hours during those 12 months. Hastings testified that there may have been "one instance" when he worked more than 12 hours per day and that he rarely worked more than 10 hours per day. Yet Hastings also testified that there were "many times" that he worked more than 12 hours per day. If "many times" meant that Hastings worked 12 hours per day for 103 days out of the 104 days he worked during the 12 months preceding his last medical leave, he would have worked 1236 hours. Additionally, Hastings also testified that he worked two hours per day from home for 9 days between March 22, 2003, and May 30, 2003, when he was on medical leave. Adding 18 hours to 1236 equals 1254, and would render Hastings eligible for FMLA leave. On the other hand, the trier of fact could determine that Hastings only worked more than 12 hours per day in "one instance," and thus did not meet the 1250-hours requirement. Therefore, summary judgment is not appropriate in favor of either party regarding whether Hastings was eligible for FMLA.

Next, both parties move for summary judgment regarding whether Hastings had a serious health condition. Specifically, Carlson asserts that (1) Hastings was not incapacitated for more than three consecutive days; and (2) tooth aches and sinusitis are not serious health conditions. Hastings cites *Thorson v. Gemini, Inc.*, 205 F.3d 370 (8th Cir. 2000), for the proposition that Carlson is estopped from asserting that Hastings did not have a serious health condition because Carlson failed to request medical certification.

The Court finds no merit to Hastings' assertion that Carlson is estopped from asserting that Hastings did not have a serious medical condition. An employer is required to request a medical certification or grant FMLA leave only when an employee provides proper notice that his or her absence may be FMLA-qualifying. *Browning*, 178 F.3d at 1049. Here, Hastings failed to provide the requisite notice that he was in need of FMLA leave. (*See* discussion *infra* at 11–12.) Thus, Hastings failed to trigger Carlson's duty to either formalize Hastings' absence as FMLA or request medical certification.

Hastings reliance on *Thorson* is unavailing. In *Thorson*, the Eighth Circuit determined that the employer was put on notice that the plaintiff might be in need of FMLA when the plaintiff was absent for more than three days and provided notes from her physician, written on two different occasions within that period of absence, indicating that she was not to work. *Thorson*, 205 F.3d at 381. It was only after the employer was put on notice that the employer "became obligated either to count Thorson's absence as FMLA leave under the 'serious health condition' provision or to follow the procedures set out in the statute and the regulations designed to prevent employee abuse of the Act." *Id.* Further, the Eighth Circuit did not find that the employer was "estopped" from challenging whether the plaintiff suffered from a serious health condition. *Id.* at 382. Rather, the court noted that the employer could not show that there was a genuine issue of material fact regarding the plaintiff's incapacity during her absences because the employer had not requested a medical certification after the plaintiff provided doctor's notes during the period of her absence, and was therefore forced to rely upon a physician's evaluation of the plaintiff performed many months after the termination. *Id.* Because Hastings failed to

9

notify Carlson that he had a serious health condition, Carlson's failure to request medical certification does not present the same issue as in *Thorson*.

The Court finds that Hastings did not have a serious health condition as a matter of law. Here, Hastings was not incapacitated for more than three consecutive days because Hastings testified that he was capable of working the week prior to April 5 and that he was able to work on Tuesday, April 6. Thus, summary judgment in favor of Carlson is appropriate. *See Olsen v. Ohio Edison Co.*, 979 F. Supp. 1159, 1164 (N.D. Ohio 1997) (stating that if the former employee fails to show that he had an illness or injury which incapacitated him for more than three days, the court's inquiry is over and summary judgment is appropriate). Additionally, even if Hastings could prove that he was incapacitated for more than three days and received the requisite treatment, he cannot show that a toothache constitutes a serious health condition. *See* 29 C.F.R. § 825.114(c) (stating that "[o]rdinarily, unless complications arise, . . . routine dental or orthodontia problems, periodontal disease, etc., are examples of conditions that do not meet the definition of serious health condition and do not qualify for FMLA leave."); *see also Bond v. Abbott Lab.*, 7 F. Supp. 2d 967, 975 (N.D. Ohio 1998) (finding that the emergency nature of the extraction of three teeth did not qualify as a serious medical condition under the FMLA).

Finally, the Court turns to Carlson's assertion that Hastings failed to provide adequate notice that he may have been entitled to FMLA leave. Carlson asserts that Hastings did not provide adequate notice because when Helgemo terminated Hastings' employment, all she knew was that Hastings had gone to the dentist for a toothache and was tired upon returning. Alternatively, Carlson asserts that it was not notified that Hastings needed a continuation of FMLA leave because Helgemo was unaware

that Hastings' prior absences were due to depression. Hastings asserts that *Spangler v. Fed. Home Loan Bank of Des Moines*, 278 F.3d 847 (8th Cir. 2002), is controlling to the Court's decision here. The Court finds that Hastings did not provide adequate notice that he may have been entitled to FMLA leave.

Hastings was scheduled to return to work from his FMLA leave on Monday, April 5. Hastings first notified Carlson of his absence that day at approximately 10:00 a.m., several hours after he awoke with severe pain in his tooth and an hour after he was supposed to report for a managers' meeting. Hastings alleges that he told Dyson that he had a toothache and sinusitis and planned to come to work after going to an emergency dentist appointment. When Hastings had not shown up for work at 5:00 p.m., Helgemo called his house. Hastings returned her call and left a message stating that he had gone to the dentist for a follow-up on a root canal and that he was tired and fell asleep upon returning home from the dental appointment. Viewed in the light most favorable to Hastings, these undisputed facts were not sufficient to put Carlson on notice that Hastings needed FMLA leave because neither a toothache nor sinusitis are qualifying serious health conditions.

Hastings' reliance on *Spangler* is misplaced. In *Spangler*, the Eighth Circuit concluded that a genuine issue of material fact existed as to whether Spangler provided adequate notice to her employer that she had a qualifying serious health condition under the FMLA. *Spangler*, 278 F.3d at 851. In her final request for time off work, Spangler told her employer that it was "depression again." *Id.* at 852. The Eighth Circuit concluded that Spangler's request was a potentially valid request for FMLA leave in light of the fact that Spangler's employer, including her supervisors, knew she needed leave in the past for depression. *Id.* Hastings asserts that "[he] did not say something like [Spangler] during the first

11

telephone message to his office, but he did go into . . . considerably more detail during the first actual telephone conversation he had that day with Michele Helgemo, and a complete history two days later when he came in to see her in person." (Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment at 8.)

The facts of this case are distinguishable from those in *Spangler*. Here, Hastings' supervisors were unaware that Hastings was on FMLA leave for depression. Further, Hastings did not tell Helgemo that he was on FMLA leave for depression until his exit interview on April 7. Regardless of whether Helgemo knew Hastings was on medical leave for depression, the fact that Hastings twice told his employer on April 5 that he was unable to come to work that day because he suffered from a toothache dispelled any assumption that this absence was related to his previous medical leave for depression. Helgemo had no reason to connect Hastings' toothache or sinusitis with depression. Indeed, Hastings testified that his depression was "over" by April 5 and that his sinusitis was "better" at that time. As a matter of law, no rational trier of fact could conclude that these facts were sufficient to apprise Carlson that Hastings may have been entitled to FMLA leave. Therefore, summary judgment in favor of Carlson is warranted.

As a matter of law, Hastings has failed to establish that Carlson interfered with his right to reinstatement following his medical leave because Hastings did not have a serious health condition and did not place Carlson on notice that he may have been in need of FMLA leave. Therefore, Hastings' FMLA claim is dismissed.

For the reasons stated, **IT IS HEREBY ORDERED THAT:**

1.     Plaintiff Hastings' Motion for Partial Summary Judgment [Doc. No. 21] is **DENIED**;

2. Defendant Carlson's Motion for Summary Judgment [Doc. No. 12] is **GRANTED**;

3. Plaintiff's Complaint (Doc. No.1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  October 27, 2005           s/Donovan W. Frank
                                   DONOVAN W. FRANK
                                   Judge of United States District Court